2023R00440/DAF/JMR

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 23-546 (KMW) |
| | : | |
| v. | : | 18 U.S.C. § 1349 |
| | : | |
| YASHA BARJONA, | : | |
| a/k/a "Rahni Song" | : | |

# I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment and any objection based on venue, the United States Attorney for the District of New Jersey charges:

### The Defendant and Co-Conspirators

1. At all times relevant to this Information:

    a. The defendant, YASHA BARJONA, a/k/a "Rahni Song," resided in Phoenix, Arizona. Defendant YASHA BARJONA owned or controlled VisionWorks Group of America LLC and Y3K Entertainment LLC.

    b. Co-Conspirator-1 ("CC-1") was a co-conspirator but is not named as a defendant herein.

    c. Co-Conspirator-2 ("CC-2") was a co-conspirator but is not named as a defendant herein.

    d. Co-Conspirator-3 ("CC-3") was a co-conspirator but is not named as a defendant herein.

1

e. Co-Conspirator-4 ("CC-4") was a co-conspirator but is not named as a defendant herein.

f. Lender-1 was a financial institution that participated as lender in the Paycheck Protection Program ("PPP"), as described herein. Lender-1 was a "financial institution" within the meaning of Title 18, United States Code, Section 20.

g. The U.S. Small Business Administration ("SBA") was an independent agency of the federal government created to aid, counsel, assist, and protect the interests of small business concerns, preserve free competitive enterprise, and maintain and strengthen the overall economy of the United States.

**The Paycheck Protection Program**

h. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who suffered the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

i. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules

and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant had to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

   j. A PPP loan application had to be processed by a participating financial institution (the lender). If the PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

   k. PPP loan proceeds could only be used by the business for certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business used the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

### The Economic Injury Disaster Loan Program

   l. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

  m. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses that were experiencing substantial financial disruption due to the COVID-19 pandemic.

  n. To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In addition, the business entity must have been in operation on February 1, 2020.

  o. The amount of the EIDL was determined based, in part, on the information provided by the applicant regarding the revenue, employees, and cost of goods of the business. The SBA directly issued any funds disbursed under an EIDL to the applicant business. A business was permitted to use EIDL funds for payroll expenses, sick leave, production costs, and business obligations such as debts, rent, and mortgage payments. If a business also obtained a PPP loan, the business was prohibited from using EIDL funds for the same purpose as PPP funds.

## The Conspiracy

  2. From in or about November 2020 through in or about June 2021, in Maricopa County in the District of Arizona and elsewhere, the defendant,

YASHA BARJONA, a/k/a "Rahni Song"

did knowingly and intentionally conspire and agree with others, known and unknown, to devise a scheme and artifice to defraud a financial institution,

namely Lender-1, and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under, the custody or control of, a financial institution, namely Lender-1, by means of false or fraudulent pretenses, representations, or promises, contrary to Title 18, United States Code, Section 1344.

## Object of the Conspiracy

3. The object of the conspiracy was for defendant YASHA BARJONA and his co-conspirators to financially enrich themselves by obtaining federal relief funds that were intended for small businesses distressed by the COVID-19 pandemic by submitting fraudulent loan applications that included false statements about their businesses' number of employees, payroll, and expenses, and by providing false documentation to financial institutions.

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that:

    a. CC-1 introduced defendant YASHA BARJONA to CC-2 and CC-3 and told YASHA BARJONA that CC-2 and CC-3 could assist YASHA BARJONA in applying for PPP and EIDL loans for defendant YASHA BARJONA's businesses and for businesses controlled by defendant YASHA BARJONA's associates.

    b. In or about November 2020 and December 2020, CC-2 prepared fraudulent EIDL applications for Visionworks Group of America and a business controlled by an associate of defendant YASHA BARJONA.

  c. In or about March 2021, CC-3 prepared fraudulent PPP applications for Y3K Entertainment Group LLC and two businesses controlled by associates of defendant YASHA BARJONA.

  d. Each of the PPP and EIDL loan applications prepared by CC-2 and CC-3 contained materially false and fraudulent information, including the number of individuals employed by the applicant business and the business's payroll, expenses, and revenue. These figures did not accurately represent the business's true operations and were inflated, which caused each business to obtain a loan it would not have been qualified to receive, or to receive a loan in an amount higher than it would have qualified for had the applications been accurate.

  e. As part of the loan applications, CC-2 and CC-3 prepared materially false and fraudulent IRS Forms, including Forms 941 (Employer's Quarterly Federal Tax Return) and Form 1040 (U.S. Individual Income Tax Return), that were created solely for purposes of applying for the PPP and EIDL loans and were never submitted to the IRS.

  f. Based on these fraudulent loan applications prepared by CC-2 and CC-3, Lender-1 and the SBA approved 3 PPP loans and 2 EIDL loans and disbursed approximately $724,300.

  g. For CC-1's role in recruiting defendant YASHA BARJONA and introducing defendant YASHA BARJONA to CC-2 and CC-3, defendant YASHA BARJONA and his associates who received loans paid CC-1 kickbacks

of at least 50 percent of the loan amounts.  Defendant YASHA BARJONA also received payments from his associates after they received loans.

### Furthering the Conspiracy

5.  In furtherance of the conspiracy and to effect its objects, defendant YASHA BARJONA and his co-conspirators committed and caused to be committed the following acts.

6.  In or about March 2021, defendant YASHA BARJONA moved his company Y3K Entertainment Group LLC into the name of CC-4 for the purposes of applying for a PPP loan.

7.  On or about March 19, 2021, CC-2 prepared—and defendant YASHA BARJONA and CC-4 submitted—a PPP loan application to Lender-1 on behalf of Y3K Entertainment Group LLC (the "Y3K PPP Application").

8.  The Y3K PPP Application contained materially false and fraudulent information, including that Y3K had 18 employees and had an average monthly payroll of $59,000.

9.  The Y3K PPP application also included purported 2019 Forms 941 in the name of Y3K.  Per the Forms 941, Y3K reported paying 18 employees $172,500 in wages, tips, and other compensation each quarter of 2019.  The Forms 941 were created solely for purposes of applying for the PPP loan and were never submitted to the IRS.

10.  In fact, Y3K had no employees and paid no wages in 2019.

11.  On or about June 15, 2021, Y3K Entertainment Group was approved for a PPP loan in the amount of $145,000.  The loan proceeds were

disbursed to a Lender-1 business checking account in the name of Y3K Entertainment Group.

  12. Between on or about June 15, 2021 and on or about June 21, 2021, defendant YASHA BARJONA caused three checks to be written to companies controlled by CC-1, totaling $90,549 (or approximately 62 percent of the loan amount).

  In violation of Title 18, United States Code, Section 1349.

## **FORFEITURE ALLEGATION**

1. As a result of committing the offense charged in Count One of this Information, defendant YASHA BARJONA, a/k/a "Rahni Song," shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), all property, real or personal, constituting or derived from proceeds traceable to the offense charged in this Information, the value of which totaled $227,330.00.

## **SUBSTITUTE ASSETS PROVISION**

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

*Philip R. Sellinger by AL*

_____
PHILIP R. SELLINGER
United States Attorney

CASE NUMBER: _____

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

**v.**

**YASHA BARJONA**

# INFORMATION FOR

**18 U.S.C. § 1349**

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

DANIEL A. FRIEDMAN
JASON M. RICHARDSON
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026